UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EVELYN DITTMAR,

                                    Plaintiff,

v.                                                          1:16-CV-0404
                                                            (CFH)
COMM'R OF SOC. SEC.,

                                    Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.

 Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202


U.S. SOCIAL SECURITY ADMIN.                 SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


CHRISTIAN F. HUMMEL, United States Magistrate Judge

<u>**DECISION and ORDER**</u>

        Currently before the Court, in this Social Security action filed by Evelyn Dittmar

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 10, 20.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is granted in part and denied in part, and

Defendant's motion for judgment on the pleadings is denied in part and granted in part.[1]

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1971, making her 38 years old at her alleged onset date and 43 years

old at the date last insured.  Plaintiff has a 12th grade education and she reported past work as a

bus monitor, personal care assistant, kitchen aide, and retail clerk.  Generally, Plaintiff alleges

disability consisting of arthritis in her hands and knees, depression, thyroid problems,

claustrophobia, diabetes, nerve damage in her right hand, and hypertension.

### B.      Procedural History

Plaintiff applied for Disability Insurance Benefits on November 27, 2012.  (T. 131)

Plaintiff's application was initially denied on April 22, 2013, after which she timely requested a

hearing before an Administrative Law Judge ("ALJ").  (T. 94)  Plaintiff appeared at a hearing

before ALJ Michelle S. Marcus on July 17, 2014.  (T. 34).  On January 5, 2015, the ALJ issued a

written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-26.)[2]  On

March 23, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Social Security Administration ("SSA").  (T. 1-3, 6-8.)

---

[1]      Parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 653(c), Fed. R. Civ. P. 73,
Local Rule 72.2 (b), and N.D.N.Y. General Order 18.  Dkt. No. 7.

[2]      The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will
be referenced as "T." and the Bates-stamped page numbers set forth therein will be used rather than the page
numbers assigned by the Court's CM/ECF electronic filing system.

### C.	The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 14-25.) First, the ALJ found that Plaintiff was insured for disability benefits under Title II until December 31, 2014. (T. 14.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 9, 2009, the alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's left hamstring tendonitis, left knee arthritis with meniscal tear, status-post carpal tunnel release surgery, status-post fusion in the first metacarpal joint of the left thumb, and morbid obesity are severe impairments, while her hypertension, asthma, hypothyroidism, diabetes, depression, anxiety, adjustment disorder, and pain disorder are not severe impairments. (T. 14-15.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 17.) More specifically, the ALJ considered Listing 1.00 (musculoskeletal impairments) and 1.02 (major dysfunction of a joint). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except the claimant could stand and walk, in combination, a total of six hours in an eight-hour day, for one hour at a time continuously. Sit six hours per day, lift and carry 10 pounds continuously and 20 pounds occasionally. She had unrestricted use of right upper extremity and could occasionally handle, finger, feel, and push pull with left upper extremity, but was unrestricted for reaching. She could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. No climbing ladders or scaffolds or exposure to vibrations and occasional exposure to extremes of cold and heat, humidity, and wetness

(T. 17-18.) Sixth, the ALJ found that Plaintiff is unable to perform any of her past work. (T. 25.) Seventh, and finally, the ALJ found that Plaintiff was not disabled at Step Five based on application of the Medical-Vocational Guidelines. (*Id.*)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ committed reversible error in relying on the Medical-Vocational Guidelines to make the Step Five finding despite the presence of significant non-exertional impairments. (Dkt. No. 10, at 3-6 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ erred in failing to explain how the weight she afforded to the opinion evidence relates to her Step Five finding, and that limitations in manipulative abilities with the left upper extremity in particular had a significant impact on the occupational base of light work, and, therefore, required the ALJ to seek vocational expert testimony. (*Id.*) Second, Plaintiff argues the ALJ failed to make an adequate credibility determination. (Dkt. No. 10, at 6-11 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ's indication that she found Plaintiff not credible to the extent Plaintiff's allegations were inconsistent with the RFC was improper and that the ALJ did not provide a sufficient reason for the adverse credibility finding. (Dkt. No. 10, at 8-10 [Pl. Mem. of Law].)

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, in response to Plaintiff's first argument, Defendant argues that the ALJ's reliance on the Medical-Vocational Guidelines at Step Five was proper because Plaintiff's non-exertional limitations did not impose a significant restriction on performance of the occupational

4

base of light work, and because the ALJ is not required to specifically state the reasons for that finding so long as her findings are supported by substantial evidence. (Dkt. No. 20, at 9-11 [Def. Mem. of Law].) Second, in response to Plaintiff's second argument, Defendant argues that the ALJ's credibility determination is supported by substantial evidence because she properly relied on an assessment of Plaintiff's daily activities, evidence that Plaintiff did not take medication for her alleged pain, and a lack of support for plaintiff's complaints of limitation in the medical treatment record. (Dkt. No. 20, at 5-9 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

[Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).


## III.    ANALYSIS

## 1.  Whether the Substantial Evidence Supports the ALJ's Step Five Finding

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

Although the claimant has the general burden to prove she has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). The

Commissioner can usually establish that there is other work that a plaintiff can perform by

reliance on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, App.

2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at

*20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from nonexertional limitations

that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids

is inappropriate. *Id.* at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

Significantly, "the mere existence of a non-exertional limitation does not automatically preclude

reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,*

802 F.2d at 603)). A plaintiff's range of potential employment is significantly limited when the

plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other

words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful

employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Plaintiff argues that the ALJ erred in relying on the Medical-Vocational Guidelines

because the ALJ's conclusion that Plaintiff's "'additional limitations had little or no effect on the

occupational base of unskilled light work' is conclusory and devoid of any reasoning." (Dkt. No.

10, at 5-6 [Pl. Mem. of Law].) She points to SSR 85-15 and SSR 83-14 for support that

Plaintiff's limitation to only occasional handling, fingering, and feeling with her left hand would

have a significant impact on the occupational base.[3] (*Id.*). Defendant counters, arguing that these

---

[3]      Plaintiff also argues in one sentence that "[a]lthough the [ALJ] states the weight she assigns to the medical opinions in this case, she fails to discuss how the opinions relate to her Step 5 determination, which is remandable error." (Dkt. No. 10, at 5 [Pl. Mem. of Law].) Plaintiff does not otherwise challenge that the ALJ committed any errors in weighing the opinion evidence. As the Court can discern how the ALJ reached RFC assessment (which was used at Step Five) based on the weight she afforded to the various opinions and her

limitations do not significantly erode the occupational base and that the ALJ was not required provide a specific explanation so long as her finding was supported by substantial evidence. (Dkt. No. 20, at 10-11 [Def. Mem. of Law].)   However, Defendant's arguments are not wholly persuasive, since it is not clear in this case that the ALJ's Step Five finding is supported by substantial evidence due to the ALJ's lack of elaboration as to the basis of her conclusions.

Defendant's assertion that this Court should rely on the outcome in *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791 (N.D.N.Y. Feb. 25, 2014) is inapposite because those facts are significantly distinguishable from the case at hand.  (Dkt. No. 20, at 10-11 [Def. Mem. of Law].) In *Zongos*, this Court found no error in an ALJ's decision to rely on the Medical-Vocational Guidelines rather than seek vocational expert testimony where the ALJ had limited the claimant to "slightly less than the full range of light work" with a sole non-exertional limitation for occasional handling, fingering, and feeling with the left hand.  *Zongos*, 2014 WL 788791, at *7, 16-17.  This Court noted that the ALJ had cited SSR 83-14 for the proposition that "'many unskilled light jobs do not entail fine use of the fingers . . . rather, they require gross use of the hands to grasp, hold, and turn objects,'" that medical evidence showed that the plaintiff had intact hand and finger dexterity with full grip strength, and that evidence of the plaintiff's daily activities showed an ability to perform fine and gross movements effectively.  *Zongos*, 2014 WL 788791, at *16-17 (quoting SSR 83-14, 1983 WL 31254, at *4).

Unlike in *Zongos*, the ALJ here did not cite any legal authority on which she may have relied when determining whether Plaintiff's non-exertional impairments imposed a significant

_____

explanations for that weight, this Court finds no merit in Plaintiff's cursory argument that the ALJ failed to connect the opinion evidence to her Step Five finding.

limitation on Plaintiff's ability to perform the occupational base of light work. (T. 25.) More

significantly, the evidence in this case fails to clearly suggest that Plaintiff's impairments did not

significantly inhibit her activities or performance on medical exams. Specifically, the evidence

related to Plaintiff's left hand is conflicting: some medical sources opined essentially no

limitations, while others concluded that she had almost no ability to use that hand. (T. 258, 285,

342, 345, 443, 448, 452, 456, 459, 461, 479, 527-28, 611, 773, 778.) However, Plaintiff was

observed to have decreased grip and/or pinch strength in her left hand on many examinations,

something which could very reasonably indicate an impact on her abilities to grasp, hold, and

turn objects with her left hand. (*See e.g.*, T. 341, 345, 349, 436, 447, 454, 463, 496, 608.) In

terms of daily activities, Plaintiff testified that she was able to engage in light housework for a

half-hour before it caused too much pain; her husband did most of the lifting when they went

shopping; she did cooking and canning of produce (with a KitchenAid that "does all the work for

[her]"), but her husband lifted the heavy pots and racks; and that she had problems using buttons,

picking up small objects, and opening jars with her left hand due to difficulty with grasping. (T.

50-56.) Plaintiff further indicated that she only engaged in cleaning for an hour at most in a day

and that her thumb would start to tremble when she tried to type. (T. 57, 61.) This testimony is

generally consistent with the function report she submitted to the Agency. (T. 165-71.)

Consequently, the evidence in this case does not appear to show a similar relative absence of

limitation when compared with the discussion in *Zongos*. The presence of both conflicting

medical evidence and Plaintiff's testimony regarding her limited use of her hands and fingers

creates a substantial question whether the ALJ's reliance on the Medical-Vocational Guidelines was supported by substantial evidence. *Zongos*, 2014 WL 788791, at *16-17.

Moreover, the outcome in *Zongos* does not direct a finding that the ALJ in this case properly relied on the Medical-Vocational Guidelines due to the significant difference in the RFC findings in each case. As noted, the ALJ in *Zongos* found that occasional handling, fingering, and feeling with the left hand was the only non-exertional impairment modifying the plaintiff's ability to perform light work. *Zongos*, 2014 WL 788791, at *16-17. By contrast, the ALJ in this case found other limitations, including the exertional limitation to only occasional pushing and pulling with the left arm, and postural and environmental non-exertional limitations. (T. 17-18.) Even if the applicable Social Security Rulings suggest that some of these additional limitations may have little effect on the light occupational base, it is not apparent how the occupational base would be impacted when all of these limitations are considered in combination. *See* SSR 83-10, 1983 WL 31251; SSR 83-14, 1983 WL 31254.

Additionally, the ALJ's decision fails to support her apparent finding that an exertional limitation to occasional pushing and pulling with the left arm would not have any impact on Plaintiff's ability to perform light-level jobs, or how the environmental restrictions would impact the occupational base of light work. *See* SSR 83-14, 1983 WL 31254 (indicating that "[w]here the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a VS [Vocational Specialist] will be necessary."). The ALJ has not provided any explanation as how she reached her conclusion to assist this Court in determining

whether her Step Five finding is consistent with the applicable legal standards and supported by substantial evidence.

Although Defendant argues that the ALJ was not required to provide a specific explanation if her conclusion was supported by substantial evidence, that assertion is not wholly consistent with applicable legal standards. (Dkt. No. 20, at 11 [Def. Mem. of Law].) This Court more recently found error meriting remand where the ALJ failed to provide a clear explanation consistent with applicable legal standards as to why the plaintiff's combination of exertional and non-exertional limitations did not impose a significant limitation on the Plaintiff's ability to perform the occupational base of light work. *See Wyman v. Berryhill*, No. 5:16-CV-0025, 2017 WL 1184203, at *2-3 (N.D.N.Y. Mar. 29, 2017). Additionally, the ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, No. 1:07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). It is not the function of this

Court to speculate as to the evidence and legal standards on which the ALJ based her decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear. *Booker*, 2011 WL 3735808, at *5 (indicating that "'it is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reasons,'" and that "a court 'may not properly affirm an administrative action on grounds different than those considered by the agency'") (quoting *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983); *Burgess v. Astrue*, 53 F.3d 117, 128 (2d Cir. 2008)). Additionally, Defendant's argument ignores the well-established fact that the Commissioner has the burden at Step Five. *McIntyre*, 758 F.3d at 150. Ultimately, because of the absence of any rationale or explanation, this Court would need to guess at the bases of the ALJ's Step Five conclusion, it is not apparent that the Commissioner carried her burden.

For all these reasons, the ALJ's failure to provide support for her rationale prevents this Court from determining whether the Step Five finding is consistent with applicable legal standards and supported by substantial evidence. On remand, the Commissioner is to elaborate on the legal and factual basis for any such conclusion, and, if warranted by a reconsideration of the evidence and the applicable legal standards, the Commissioner may obtain testimony from a vocational expert to determine whether Plaintiff remains able to perform work that exists in significant numbers in the national economy.

2. **Whether Substantial Evidence Supports the Credibility Determination**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 20, at 5-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff argues that the ALJ's credibility finding is the product of reversible error because she included boilerplate language indicating that she found Plaintiff was not credible to the extent her allegations were "inconsistent with the above residual functional capacity assessment." (T. 18-19; Dkt. No. 10, at 9-11 [Pl. Mem. of Law].) Although Plaintiff is correct

that such a boilerplate analysis, on its own, generally fails to amount to a proper explanation for a credibility determination, the ALJ also noted, in the same sentence, that she discounted Plaintiff's allegations based on their inconsistency with her activities of daily living and the objective findings. (T. 19.) The ALJ, therefore, did not make the credibility determination based wholly on such comparison with her own findings. Plaintiff herself cites to a recent decision of this Court that acknowledges that, despite including such ambiguous boilerplate language in the decision, "'this erroneous boilerplate language does not merit remand if the [hearing officer] offers specific reasons to disbelieve the claimant's testimony.'" (Dkt. No. 10, at 10 [Pl. Mem. of Law]); *Kameisha v. Colvin*, 100 F. Supp. 3d 200, 209 (N.D.N.Y. 2015) (quoting *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-CV-1631, 2014 WL 420465, at *7 (N.D.N.Y. Feb. 4, 2014)). As the ALJ cited to other specific reasons, her mere inclusion of this boilerplate phrasing does not necessitate remand.

Contrary to Plaintiff's argument that the ALJ's discussion of the medical treatment failed to include an explanation or analysis as to how the evidence showed Plaintiff was less than credible, the ALJ's summary of the course of medical treatment and the objective findings is detailed and sufficiently shows the evidence on which the ALJ relied when determining that Plaintiff's allegations were not supported by the medical evidence. (T. 19-22.) The ALJ was not required to state explicitly how all of the evidence was inconsistent with Plaintiff's allegations because the Court can easily follow the ALJ's logic and "glean" the rationale behind her determination from the detailed recitation of the medical evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the

court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see also Graves v. Colvin*, No. 1:14-CV-0378, 2015 WL 3901779, at *9 (N.D.N.Y. June 25, 2015) (finding no error in the ALJ's credibility determination because "[t]he ALJ discussed in detail the medical evidence, educational testing and evaluations, and other relevant information in the records as it related to Plaintiff's testimony"); *Hickman ex rel. M.A.H.*, 728 F. Supp. 2d at 173.

Next, Plaintiff acknowledges that the ALJ cited her reported activities of daily living as a reason for the adverse credibility determination, but objects to the ALJ's citation to activities such as performing light housework for a limited period of time because, in her estimation, such "innocuous" basic self-care activities do not provide a basis for finding Plaintiff's allegations not credible. (Dkt. No. 10, at 10 [Pl. Mem. of Law].) As already noted above, Plaintiff testified at the hearing that she performed light housework for a half-hour before it caused too much pain, and no more than an hour in one day; her husband did most of the lifting when they went shopping; she cooked and canned produce (with a KitchenAid that "does all the work for [her]"), but her husband lifted the heavy pots and racks; she had difficulty fastening buttons, picking up small objects, and opening jars with her left hand due to problems grasping; and that her thumb trembled when she typed. (T. 50-57, 61.) In her written function report, Plaintiff indicated she could prepare meals daily as long as they did not require lifting or opening jars, shower, dress, clean dishes, watch television, dust, do laundry (other than lifting the laundry basket) and small cleaning jobs, drive for trips under 20 miles, shop every two weeks, and socialize on the phone

and computer. (T. 165-69.) Although Plaintiff's activities do show that she was limited to some extent, the ALJ was entitled to consider these activities when assessing credibility and there is substantial evidence to support her finding that Plaintiff's reported activities were not wholly consistent with the degree of limitations she otherwise alleged related to her impairments. 20 C.F.R. § 404.1529(c)(3).

For all these reasons, the credibility determination included clearly articulated reasons supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED** in part and **GRANTED** in part; and it is further

**ORDERED** that this matter is **REMANDED** for further administrative proceedings consistent with this Order and Decision pursuant to Sentence Four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: May 30, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge